CATHERINE BOWERS, by her next friend,

*v.*

ANNIE BOWERS et al.

[Submitted November 11th, 1918. Decided February 4th, 1919.]

1. A married woman may, with her husband, mortgage her land to secure the payment of a debt of his, or of any other person, for the payment of which she is in no way liable. *Merchant* v. *Thompson, 34 N. J. Eq. 73,* followed.

2. The evidence in this case does not prove that there was no consideration for the mortgage in question, nor that it was a voluntary conveyance, and void under the statute of frauds.

3. If a second purchaser of a mortgage with notice, acquire title from a first purchaser who was without notice and *bona fide,* he succeeds to all the rights of his immediate grantor.

---

On bill, &c.

*Mr. Edward P. Johnson* and *Mr. Hugh K. Gaston,* for the complainant.

*Mr. Worrall F. Mountain,* for the defendant Newark Trust Company.

*Mr. George E. Clymer,* for the defendants Roses, Bowerses and Prout.

BACKES, V. C.

This is a creditor's bill. The facts are few and undisputed. Catherine Bowers, the complainant, held the defendant Annie Bowers' due bill for $500, upon which she sued and recovered in the supreme court. Under execution the undivided one-third interest of Annie in lands in Somerset county was sold and conveyed to Catherine. While the suit was pending Annie and her husband executed their bond and mortgage on Annie's interest in the land to Allen W. Rose for $3,500 to satisfy a debt of Annie's husband. Rose assigned the bond and mortgage to William Prout, and Prout assigned them to the Newark Trust Company as collateral security for his debt. Catherine filed this bill to set aside the mortgage as fraudulent and the trust company counter-claimed, praying a foreclosure and sale. The bill charges that the mortgage was without consideration, and was given to protect the property from the claim of Annie's creditors, and to prevent the complainant from collecting her debt; that as against Catherine, a then existing creditor, it was a voluntary conveyance and constructively fraudulent, even though there was consideration; and that it was void because given by a married woman as surety for the debt of another—her husband in this case.

1. The last ground may be disposed of by quoting from well-recognized authority: "It is established that a married woman may, with her husband, mortgage her land to secure the payment of a debt of his or of any other person, for the payment of which she is in no way liable." *Merchant* v. *Thompson, 34 N. J. Eq. 73*, and cases there cited.

2. The charge that there was no consideration for the mortgage, and that it was given, intentionally, to cheat the complainant, is not borne out by the testimony. These facts are established to my entire satisfaction. Rose lent to Henry Bowers, Annie's husband, from time to time nearly $3,500. The first loan was for $1,000, for which a promissory note was given. Two items of $500 each were advanced upon the security of a deed made by Bowers to Rose for twenty lots at Eagle Rock Terrace, and the remainder was lent in dribs, ranging from $25 to $100 and upwards, for which due bills were taken. The loans

were made over a period of four years next before the mortgage was given, April 26th, 1910. Rose and Bowers were friends engaged in the same line of business, real estate, and Rose, who had some money then, let Bowers, who was hard up, have it as he could spare it. There came a time when Rose needed funds and Bowers offered the only thing he could furnish in payment, a mortgage on his wife's interest in the lands in Bernardsville. For the bond and mortgage Rose gave up the deed for the twenty lots, the note for $1,000 and the due bills, and as the accounting showed a balance of some $50 or $60 in favor of Bowers he paid that. Mr. Clymer, a reputable member of the bar, witnessed the negotiation of the bond and mortgage for the deed, note, due bills and cash. As to the creation of the debt we have the testimony of Rose and Bowers taken in New York. I have read the depositions with careful attention, and checked it up with great care, having in mind that possibly it might have been manufactured, but, after thorough search, I am convinced that Bowers owed Rose $3,500, less the $50 or $60 that Rose paid when he got the mortgage. I am also satisfied that Mrs. Bowers gave the mortgage entirely without thought of the complainant's debt, and that she gave it solely to aid her husband, and that Rose had no knowledge of the debt or of the complainant's suit when he took it. There are, as a rule, in cases of this kind where fraud upon creditors is charged, peculiar circumstances that excite suspicion and provoke litigation, and this one is not an exception. The mortgage was given by Annie to Rose while the suit at law against her was pending and shortly before it was brought to trial. It was assigned to Prout, Annie's attorney, on the very day it was executed, and the trial was permitted to go by default. Further, the assignment was not recorded until seven years afterwards, 1917. It looked like a bald fraud, but this is the explanation and it is plausible and acceptable. Rose, as I have said, knew nothing of the law suit, nor of Prout's relation to Annie Bowers. Prout had been Rose's attorney and Rose owed him some eight hundred dollars for professional services. When Bowers offered him the mortgage Rose turned to Prout, who held out promises that he could dispose of it for cash, and it was forthwith assigned; the inducement to Prout being that

he was to deduct what was due to him. Prout was unable to sell the mortgage, and it was then arranged that he should pay Rose as his limited means would permit, and that took seven years to do. In the meanwhile Prout held the mortgage and assignment and Rose held the bond, the agreement having been that the as-. signment was not to be recorded until Rose had been paid in full. The inquiry into whether Prout paid Rose, and how he paid him, is, of course, of no moment, except, perhaps, as it bears upon the integrity of the transaction between the Bowerses and Rose that led to the execution of the mortgage. That the mortgage was given on the eve of the trial of the law suit, and that the defence was abandoned, aroused more than curiosity. It created mistrust. But at that time Prout held the mortgage, which more than covered all his client possessed, and he felt no longer interested in the outcome. It is not amiss to say that had the defence interposed in the law suit, that the due bill sued on was given by Annie to Catherine as a surety for her husband's debt, been pleaded and proved here, it would have gone far, notwithstanding the judgment at law, toward establishing Annie's good faith in giving the mortgage to Rose and would have been a complete answer to the claim, next to be considered, that the mortgage was voluntary, for then the equities of Catherine and Rose would have been on a par and Rose's legal title would have prevailed.

3. The mortgage was not a voluntary conveyance and void under the statute of frauds, within the principle laid down in *Haston* v. *Castner, 31 N. J. Eq. 697*, that a voluntary conveyance is void by the force of the statute with respect to debts existing at the date of such conveyance. That the mortgage was given by Annie while she was indebted to Catherine Bowers we must assume to be established by the judgment, and that she was under no legal or moral obligation to give it and that it was in nature and effect a gift to her husband is clear, and if it had been given to secure his pre-existing debt a different question would have arisen. But here the mortgage was given in *payment* of her husband's debt. Rose took the mortgage in satisfaction of his debt, and not only acquitted Annie's husband of his liability, but also gave up his securities and paid cash besides, and all

this he did not knowing of Catherine's claim against Annie. That he is precisely within the definition of a *bona fide* purchaser for a valuable consideration, it seems to me cannot be questioned. *Big. Fraud. Con. 532.* I do not mean to intimate that had Rose had knowledge of Annie's debt he would not have had the standing of a *bona fide* purchaser for a valuable consideration, assuming, of course, that the mortgage was given in absolute good faith without intention to defeat her creditors, for it is a matter of common knowledge and of daily practice that debtors lend their credit and property for another's undertakings, and that such transactions are uniformly upheld by the courts when made in good faith. In such event that question is solely one of fact. If it had appeared in the case that Rose knew that the property Annie mortgaged to him for her husband's debt was all that she possessed, and that she was indebted to others, the good faith of the parties would have been seriously impeached.

The complainant's right to relief—that is, to supplant the superior legal estate of Rose and his assigns, rests exclusively upon the twelfth section of the statute of frauds and perjuries (*Comp. Stat. p. 2818*) by which conveyances of lands or chattels made for the purpose of delaying or defrauding creditors are declared to be void as against such creditors. But the fifteenth section provides that the act shall not extend to any conveyance made in good faith and for a valuable consideration to a person not having notice of a fraud. As Rose's mortgage and Rose himself are within the category of the saving clause, the statute fails of operation.

That Prout when he took the assignment from Rose knew of the complainant's debt, and realized that the mortgage would prevent its collection, cannot affect the stability of the mortgage. The rule is that if a second purchaser with notice acquires title from a first purchaser, who was without notice and *bona fide,* he succeeds to all the rights of his immediate grantor. *Pom. Eq. Jur.* (*4th ed.*) § *754; Holmes* v. *Stout, 4 N. J. Eq. 492; Rutgers* v. *Kingsland, 7 N. J. Eq. 178, 658,* and *Roll* v. *Rea, 50 N. J. Law 264.*

The bill will be dismissed and the counter-claim of the Newark Trust Company will be sustained, with costs.